IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

AVERY L.A. MOORE                                                                                  PLAINTIFF

v.                                            4:17-CV-540-BSM

BOARD OF TRUSTEES OF THE
UNIVERSITY OF ARKANSAS; UNIVERSITY
OF ARKANSAS d/b/a University of Arkansas
Little Rock—College of Education and Health
Professions; and ANN BAILEY BAIN, WILLIAM E.
GARNER, GAIL HUGHES, NANCY HAMILTON,
and RAYMOND ORTEGA, Individually, and acting
in their official capacities as employees of the
University of Arkansas Little Rock                                                        DEFENDANTS

RESPONSE TO BRIEF IN SUPPORT OF THIRD
AMENDED MOTION FOR INJUNCTIVE RELIEF

I.      Relevant Facts

As Defendants stated in the Response to Second Amended Motion, many of the "facts" provided by Plaintiff ("Moore") are inaccurate, incomplete and contradicted by her own exhibits, and Defendants offer the following factual summation.

Moore, as she states, has attended UALR since 2004 and holds two undergraduate degrees from the school. She has recently been attending as a graduate student in the UALR School of Counseling, Human Performance and Rehabilitation (CHPR) and is pursuing a Masters degree in Rehabilitation Counseling, which is an online Masters program. Moore is registered with the UALR Student Disability Resource Center (DRC) and has been since 2009. The DRC collaborates with students, faculty and staff to ensure that UALR is accessible to everyone. They provide information regarding the ADA and Section 504 and engage in an

1

interactive process with students to identify barriers to inclusion and accommodations to remove them.  See http://ualr.edu/disability/.

Each semester Moore, in consultation with the DRC, identifies accommodations needed in her courses, and the Center sends notice letters to Moore's professors.  The notices sent in the spring, summer, and fall 2017 semesters were the same as that in Moore's exhibit no. 6, pg 2, sent in summer 2017.  See P's Exh. 6 and D's Exh. 1, notice to Gardner.  That portion of the notice regarding web accommodation (all Moore's classes are online) provided that Moore should be allowed 1) "Extended time for Tests (double)" and 2) "Absences related to disability* – May need extension on some deadlines* – Please allow to (sic) student to work ahead when possible."  Further explanation regarding the starred language provided:  "Some items may be marked with an asterisk.  This is to indicate to you that the student's condition will likely impact these areas. *Faculty have discretion in providing these suggested accommodations.*  Call DRC with any questions" D's Exh. 1(emphasis added).

Moore does not allege that the DRC failed to cooperate with and assist her in obtaining her requested accommodations or that the Center denied her those accommodations.  Rather, her claims are that some of her professors, beginning a year ago in the spring semester of 2017 (defendants Garner and Ortega), did not implement the requested accommodations which, under her interpretation, would have allowed her to make up missed exams and submit assignments wholly on Moore's own time frame, without restrictions.  Moore claims the alleged refusals to follow the requested accommodations resulted in her "forced" withdrawal from classes last spring.  The University's refusal to then refund her spring tuition, Moore further alleges, caused her to incur summer tuition charges. The balance remains outstanding. (Moore withdrew from all four of her classes in spring semester, but only raises issues with two of them).

Moore's allegation regarding defendant Hughes is that when she again failed to complete any of the course work by end of semester, Hughes also required her to withdraw from a summer 2017 class, rather than allowing her to take an incomplete and submit all of the work after the semester ended. Moore completed and passed coursework in her other four classes for summer term. Moore's allegation regarding Defendant Hamilton is that in the 2017 fall semester, Hamilton failed to accommodate her by refusing to modify certain course requirements for late submission and thus "the highest grade" she could have achieved in that class was a "B.

Although Moore's summer tuition balance was still outstanding at the time of fall enrollment, she was nonetheless allowed to enroll in a good faith effort on the part of the school while the parties engaged in ongoing discussions regarding Moore's complaint filed with the Office of Civil Rights. (OCR did not dismiss Moore's complaint because she requested it to pursue this lawsuit as she alleges, but because OCR's policy is to do so after a complainant files suit.) Moore and her attorney were notified on several occasions, as stated in Defendants' first response, that, per University policy, Moore would not be allowed to enroll in spring of 2018 if the balance remained unpaid. It is the unpaid balance that has resulted in a hold on her academic records, release of financial aid and a bar to enrollment. Moreover there is absolutely no merit to or evidentiary support for Moore's allegations that UALR has retaliated against her (refusing to meet with her or to provide advising, etc.) for filing an OCR complaint. See Plaintiff's brief, p. 4.[1]

II.     No Probability of Success on the Merits

As Defendants set forth in their previous response, Moore is not likely to succeed on her

---

[1] To the contrary, Moore often rejected efforts to assist her. For example, Moore requested to meet with Hamilton regarding her grade appeal. When Hamilton responded and suggested a meeting time, Moore replied that policy did not require her to meet in person and that doing so would aggravate her disability. D's Exh. 2. On another occasion, the DRC Director, Reed Claiborne, reached out to Moore regarding technical issues she said she was having in Defendant Garner's class. Moore responded with name-calling and threats to sue. D's Exh. 3.

claims of disability discrimination because not only is she unable to show that discrimination occurred, she cannot chin the higher bar of showing that Defendants "acted in bad faith or with gross misjudgment" in their actions.  To recover from a school under the ADA or the Rehab Act, a plaintiff must show gross misjudgment or bad faith on the part of school officials.  *Hoekstra v. Independent Sch. Dist. No. 283,* 103 F.3d 624, 626 (8th Cir.1996); *Brantley v. Independent Sch. Dist. No. 625,* 936 F.Supp. 649, 656 n.14 (D.Minn.1996).  See also *B.M. ex rel. Miller v. South Callaway R-II Sch. Dist.*, 732 F.3d 882, 887 (8th Cir. 2013).  "The effect of this standard is to deny a student relief unless the school has acted egregiously." Thomas Simmons, *The ADA Prima Facie Plaintiff: A Critical Overview of Eighth Circuit Case Law,* 47 Drake L.Rev. 761, 822 (1999).

In the case of both Ortega and Garner, for example, Moore's own exhibits clearly show a complete absence of any bad faith.  Moore's Exh. 2, pg. 2, an email from Gardner to Moore dated March 2, 2017, explains that Gardner was aware of the accommodation for extended deadlines for some assignments and extra time to take tests, but that those accommodations did not apply where Moore completely failed to turn in one major assignment and to take the mid-term exam – all without any communication whatsoever from Moore until the semester was more than halfway over.  Because she could not hope to earn a passing grade at that point, Gardner recommended she withdraw to save her GPA.  *Id.*   Ortega also sent Moore an email communication fully explaining his course structure and emphasizing that, although late submissions would not be penalized, the student would be unable to receive the necessary feedback to submitted coursework and an opportunity to correct the work if the student waited until end of semester to submit the assignments.  He encouraged her to contact him should she encounter any difficulties with material or time constraints.  D's Exh. 4.  Both Garner and Ortega

(as did all of Moore's professors) made the semester course work available at the beginning of the semester and allowed Moore to work ahead of the assignments. All course information, including expected deadlines and exam dates, rubric, scoring, etc. were provided in the course Syllabi. See D's Exh. 4.

The above shows that both Garner and Ortega were notified of Moore's request for extra test-taking time and extension on assignment deadlines and both were receptive and prepared to implement those accommodations. The deadline extension accommodation (for "some" assignments and at the professor's discretion) and double time for test taking, however, could not have been reasonably taken to mean that Moore would be excused from sitting for scheduled exams, nor did it mean she could wait to request deadline extensions or to submit all of her assignments until well after the deadlines had passed without any discussion at all with her professors. See P's Exh. 1, email from Gardner. Moore never once contacted Dr. Garner or Dr. Ortega, her advisor, DRC staff, or any other UALR official about any problems with the demands of her courses.

Moore's administrative withdrawal from Defendant Hughes' class in summer 2017 was likewise due to her failure to submit any of the materials during the course of the semester or to contact Hughes about her options until almost the end of the semester. Hughes offered to explore the possibility of Moore taking an "incomplete" earlier in the term and instructed Moore to contact her to discuss that option; however, Moore never contacted Hughes about this option as directed. See P's Exh. 3 (emails between Moore and Hughes). At term end, Hughes initially gave Moore a failing grade but later administratively withdrew her to protect her grade point average.

Because Hughes' class was a prerequisite to taking higher level courses in the program,

Moore was unable to take the courses she wanted in the fall.  This, too, she alleges was the result of discrimination by Hughes in not allowing her to take an incomplete in the course and submit the work later in the year.  Moore has attached Exh. 4 which explains the University's grading system.  The policy explains that incompletes are granted when "circumstances beyond a student's control prevents the student from completing all of the work required for a course."  Here, by the end of the term, Moore had not completed *any* of the required work.  The policy's clear intent is not for students to be able to submit work for the entire course after the term expires, but is limited to students who only had some remaining portions to complete.  Further, the policy provides explicit requirements for obtaining permission for an incomplete, including a request in writing that sets forth a plan for completing the missing work.  P's Exh. 4, pg. 2.  Moore never submitted this written request and plan.  Her argument on this point is negated by her own exhibit.  Moore makes no allegations with regard to Defendant Bain, and presumably Bain is being sued as Dean of the College of Education and Health Professions.

      Defendants again direct the Court to Moore's own exhibit 6 with regard to Defendant Hamilton.  In her email of September 25, 2017, Hamilton explains in great detail how she proposed to accommodate Moore's disability as per the notification she received near the beginning of the semester, allowing Moore to wait and submit all exams on the last day of class and to submit some of her discussion posts late (although she normally did not do so).  She clearly explained to Moore, however, that a "major" component of the course involved online discussion *reply* posts and that she could not accept late responses for that portion of the course; however, those posts accounted for only 50 out of 500 points for the entire semester.  Moore did not communicate again until almost two months later.  Hamilton explained that Moore's lack of any submitted work at that point would be difficult to overcome.  P's Exh. 6, email of November

20. (Moore earned a "C" in the course, which she appealed; however, as Hamilton pointed out, even without earning any of the points for reply posts, Moore could have made a "B" in the course.) These emails show that Hamilton made every conceivable effort to accommodate Moore as per the DRC notification letter and to enable Moore to succeed, while still retaining the core components of the coursework.

A requirement that some adherence to the course structure be followed and that at least some type of notification or communication occur when the student is unable to comply with, or wishes to deviate from, that structure is both necessary and entirely reasonable. In addition, and as the DRC notices provided, professors have some discretion in implementing accommodations as appropriate to the particular course and are not required to abandon core components of the course materials. Moore was provided the accommodations she and the DRC agreed upon. The parameters imposed in the courses discussed above in no way violated Moore's right to be provided "*reasonable* accommodations" for her disability, much less amounted to a "specious" and "unfettered license" to discriminate. P's Brief, p. 15. Furthermore, courts regularly apply the "academic deference rule" to challenges arising under the ADA and Rehabilitation Act (*Falcone v. University of Minnesota* (D. Minn., Sept. 3, 2003, No. CIV. 01-1181 JRTSRN) 2003 WL 22076604, *aff'd sub nom. Falcone v. University of Minn.* 388 F.3d 656 (8th Cir. 2004) (citing *Amir v. St. Louis Univ.,* 184 F.3d 1017, 1028 (8th Cir.1999) (ADA case)) and the Supreme Court has repeatedly admonished courts to respect the academic judgment of university faculties. *Anderson v. University of Wisconsin,* 841 F.2d 737 (7th Cir.1988) (citing *University of Michigan v. Ewing,* 474 U.S. 214 (1985); *University of Missouri v. Horowitz,* 435 U.S. 78 (1978)).

Moore is not likely to succeed on the merits of her disability discrimination claims and her motion for injunctive relief should be dismissed on this basis.

III.    No Threat of Irreparable Harm

Defendants have previously set forth their arguments with regard to Moore's inability to show a threat of irreparable harm to entitle her to preliminary injunctive relief in Defendant's Response to Second Amended Motion for Injunctive Relief and will not restate those arguments here, but incorporate them by reference in this Response and refer the Court to pages 8-10 of the previous Response.

Defendants will again emphasize that all of the complained of conduct by Moore's professors has already occurred, thereby making *prospective* relief by way of an injunction inappropriate. See *S.J.W. ex rel. Wilson v. Lee's Summit R-7 School Dist.* 696 F.3d 771, 778–779 (8th Cir. 2012) (perceived harm by lack of award of honors credit was not "potential" but had already occurred). Moore has not challenged the agreed upon accommodations, themselves, but how she feels they were applied. Moore's only argument is that the past alleged failure to accommodate her "will happen again" in future classes. Each class is different, and Moore's interactions with her professors, as well as her own performance in those classes, were and will be different. It must be remembered that Moore took four other classes over the summer and another in the fall without complaint – some with the very same professors she complained about last spring. Moore cannot rely upon mere speculation as to whether and how her accommodations may be implemented in unnamed future classes. Id. ("Speculative harm does not support a preliminary injunction.") Furthermore, Moore is not currently enrolled in school and thus there are no "ongoing" violations which can be enjoined.

As to Moore's enrollment for spring 2018, there is no underlying discriminatory reason for the holds on her student records which bar reenrollment. The holds are for non-payment of tuition. The connection between the circumstances under which she withdrew from spring

classes and the incurring of summer tuition is so attenuated as to be non-existent. Also, as previously stated, she will not be permanently and irreparably harmed by sitting out a semester, but only delayed.

    IV.    <u>Balancing Test</u>

Moore argues that Defendants have not conducted the balancing test between the harm to her and the injury that granting the injunction would entail. Such a balancing test is not necessary in light of the Moore's deficiencies under the first two factors as discussed above. However, Defendants maintain that the University already has a long standing history of working with Moore to ensure she receives the accommodations she needs and requests, in part by altering deadlines and timeframes for completing the coursework. Such accommodations should not extend, however, to a fundamental alteration of the curriculum itself, which is what Moore would have the University do. This, the courts have refused to allow. The scales in this instance weigh in favor of the University.

    V.    <u>Conclusion</u>

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 128 S.Ct. 2207, 2219 (2008) (citation and quotation omitted); *see also Sociedad Anonima Vina Santa Rita v. U.S. Dep't of Treasury*, 193 F. Supp. 2d 6, 13 (D.D.C. 2001). Accordingly, the "power to issue a preliminary injunction . . . should be 'sparingly exercised,'" *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969), and such an injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

For all the foregoing reasons, and for the reasons set forth in Defendants' first motion response, Moore has not established that she is entitled to the extraordinary remedy of

preliminary injunction and her Third Amended Motion for Preliminary Injunctive Relief should be denied and dismissed.

Respectfully submitted,

BOARD OF TRUSTEES OF THE
UNIVERSITY OF ARKANSAS, ET AL.

By: /s/ Sarah L. James

Sarah L. James
Arkansas Bar# 90135
Associate General Counsel
University of Arkansas System
2404 North University Avenue
Little Rock, AR 72207-3608
Telephone: (501) 686-2519
Fax: (501) 686-2517
EMAIL: sjames@uasys.edu

CERTIFICATE OF SERVICE

I, Sarah L. James, do hereby certify that on January 10, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Lorraine Hatcher
P.O. Box 21294
Little Rock, AR 72221
Phone: (501) 681-2402
lorrainehatcher@yahoo.com

/s/ Sarah L. James (#90135)
Associate General Counsel
University of Arkansas
2404 North University Avenue
Little Rock, AR 72207-3608
Phone: 501-686-2519
Fax: 501-686-2517
E-mail: sjames@uasys.edu